IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHRIS JONES,

        Plaintiff,

vs.                                     No. CIV 04-174 JH/LFG

THE CITY of ALBUQUERQUE; OFFICER
STEVE PICCHIONE, OFFICER WOSICK,
OFFICER MASON, OFFICER MOCK, SGT. HEH,
ALBUQUERQUE POLICE DEPARTMENT,
in their official and individual capacities;
GILBERT GALLEGOS, ALBUQUERQUE CHIEF
of POLICE, ROBERT WHITE, ALBUQUERQUE
CITY ATTORNEY, in their official and individual
capacities; and DONALD HARRIS, ALBUQUERQUE
ASSISTANT CITY ATTORNEY, in his official and
individual capacities,

        Defendants.

**MEMORANDUM OPINION AND ORDER
ON PLAINTIFF'S MOTION TO COMPEL
DIRECTED TO DEFENDANT MICHAEL WOSICK**

THIS MATTER comes before the Court on Plaintiff Chris Jones ("Jones")'s Motion to

Compel Defendant Michael Wosick ("Wosick") to provide answers to Interrogatories and Requests

for Production [Doc. 70], filed herein on July 13, 2005.  Wosick filed his Response [Doc. 91] on

August 5, 2005, and Plaintiff filed his Reply [Doc. 111] on August 29, 2005.  The motion is now fully

briefed.  No oral argument is necessary.  For the reasons given below, the Motion to Compel is

granted in part and denied in part.

**Background**

Jones filed his Complaint For Damages and Civil Rights Violations and Systemic Injunctive Relief on February 18, 2004.  In the complaint, Jones alleges that on or about February 19, 2001 officers of the Albuquerque Police Department ("APD") obtained a search warrant upon false and illegally obtained information and used the allegedly invalid warrant to search his locked bedroom and wrongfully seize $10,000 in cash from a locked safe inside the bedroom.  Jones states that he was never charged with any crime as a result of the search.

The factual background of the search is alleged in Plaintiff's complaint (and disputed by Defendants), as follows.  On February 19, 2001, APD officers were dispatched to a residence on a domestic violence call.  The caller stated that Rodney Goodloe ("Goodloe") was brandishing a weapon.  Officers later found Goodloe at a residence at 2632 Granite, NW, where he was arrested. The arresting officers were searching for the weapon that Goodloe reportedly brandished during the domestic violence dispute.  The apparent lessee of the residence, David Summerville ("Summerville"), gave officers written permission to search the residence, and Goodloe gave oral permission to search his car and the guest room at the residence where he was staying.

No gun was found as a result of these searches, and Goodloe repeatedly denied that he had a gun.  The officers continued to press Goodloe to reveal the location of the gun they believed was nearby.  The officers noticed a locked bedroom door and "decided that it was Mr. Goodloe's room." In fact, the bedroom belonged to Plaintiff Chris Jones, who was not present at the time of the search and had no involvement in the reported domestic violence incident.   Neither Goodloe nor Summerville had actual or implied authority to consent to a search of Plaintiff's bedroom, and both men denied that the room belonged to Goodloe.  In spite of these denials, the officers forcibly entered

the room and discovered a locked safe inside.  Officers repeatedly stated to Mr. Goodloe that there

was a gun in the safe and that it was "hot" (stolen); Mr. Goodloe "finally stated in exasperation" that,

"If [you?] think there's a gun in there, there's a gun in there, there's a gun in there.  If you think if

it's hot, it's hot."

The officers asked Goodloe and Summerville to open the safe, but they did not know the

combination to Plaintiff's safe.  The officers found mail addressed to a Terry Lamont Jones in the

room, and one of the officers stated that the room belonged to Terry Jones.  Plaintiff alleges further:

> Despite Officers' concerns about having searched the wrong room,
> Officer Wosick proceeded to seek a search warrant upon information
> provided by the original responding officer, Officer Picchione, and
> presented the judge with a warrant affidavit reflecting the false
> affirmations that Mr. Goodloe had represented that the room was his
> and that the safe contained the gun involved in the alleged domestic
> violence incident, as well as other information obtained by police
> officers after breaking into the locked room . . . .  Officer Wosick
> obtained the search warrant for the safe upon the false and illegally
> obtained information in the affidavit . . . .

Plaintiff alleges further in the complaint that, after the officers opened the safe pursuant to the

search warrant and found $10,000 cash inside, they placed the cash into an account, in violation of

state statutory requirements.  He alleges that the City of Albuquerque ("City") failed to transmit any

notice of forfeiture to Jones in violation of state law, and that the City never legally forfeited his

money nor took any other actions to obtain legal title to the seized property.

In spite of this, he claims, the City and APD and its officers failed and refused to return his

money upon his request, even after he demonstrated that the funds had a legitimate source, after he

hired counsel to assist him in getting his money back, and after the City filed an allegedly frivolous

interpleader suit, seeking but failing to find other claimants for the cash.  Jones alleges further that

3

the City continues to retain his property with no legal basis for doing so.

Jones's complaint sets forth counts based on constitutional violations (unreasonable search and seizure, conspiracy, and deprivation of due process); as well as municipal liability based on maintenance of an official or unofficial policy of "no settlement" of police related claims, and a policy not to return claimants' properties when claimants seek reimbursement of attorney fees; failure to train and supervise police; and failure to appropriately hire, train and supervise City Attorneys. Jones seeks compensatory and punitive damages and attorney fees, as well as "systemic injunctive relief" to prevent Defendants from perpetrating further constitutional deprivations.

Defendants deny Plaintiff's allegations and assert various affirmative defenses. They state that the officers who seized the money did so in connection with a criminal matter involving other persons present at Jones's house at the time of the seizure, that they had no notice that the money belonged to Jones, that the cash was seized and tagged into evidence in the criminal case involving one of these other persons, and that the City filed the interpleader action to determine the rightful owner of the funds, finding Jones's evidence of his ownership to be insufficiently determinative. The City asserts that after disclaimers were filed in the interpleader suit, the City agreed to release the funds to Jones, but that Jones refused, stating he wished to pursue his other claims based on Defendants' actions with regard to the money.

Jones served the various Defendants with discovery requests, beginning in September 2004. Defendant Wosick served his responses in February 2005. Plaintiff's attorneys were dissatisfied with the Defendants' responses, and counsel states in the motion that they made several attempts to confer with defense counsel, including a "formal good-faith letter," dated April 9, 2005, which Jones attaches as Exhibit B to his Memorandum in Support of the Motion. Finding no satisfaction in these

attempts to resolve the parties' discovery dispute, Jones now files this Motion to Compel.

## Discussion

Jones asserts that Wosick provided incomplete and non-responsive answers to his Interrogatories and Requests for Production, making conclusory and unjustified objections to the discovery requests and failing to support his claims for privilege and privacy with a privilege log. He seeks a Court order directing Wosick to fully respond and asks as well for unspecified sanctions against Wosick.

Wosick asserts that, counting all sub-parts, Plaintiff's interrogatories exceed the numerical limits. He further claims that, notwithstanding this, his answers constituted good-faith attempts to respond to the discovery requests, many of which were, he asserts, vague, irrelevant and overly broad. He argues that there is no basis for imposing sanctions on him.

The federal rules provide for broad and liberal discovery. Fed. R. Civ. P. 26 allows each party to obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. To be discoverable, the information need not be admissible at trial so long as it appears reasonably calculated to lead to discovery of admissible evidence.

While this language is broad, the scope of allowable discovery is not without limits. In considering motions to compel, the Court may properly balance the needs and interests of the parties and may limit discovery where the benefit is minimal and the burdens of production are great. Koch v. Koch Indus., Inc., 203 F.3d 1202, 1238 (10th Cir. 2000); Fed. R. Civ. P. 26(b)(2).

With these principles in mind, the Courts turns to an examination of the disputed Interrogatories and Requests for Production, as well as the appropriate form of protective order in this case.

## INTERROGATORIES

As noted above, Wosick contends in his Response brief to Plaintiff's Motion to Compel that the number of interrogatories exceeds the maximum limit. This assertion was not made as an objection to answering any specific interrogatory, and the Court will not consider an objection raised for the first time in Defendant's briefing on the motion.

### Interrogatory No. 2

In this interrogatory, Plaintiff asks Wosick to state what he was told by any officer, in the course of gathering information for the search warrant affidavit, as to who occupied the locked room that was to be searched. Defendant answered that the information that was provided to him in connection with the search warrant is contained in his Supplemental Offense Report and in the search warrant affidavit, copies of which are attached to the interrogatory answers.

Plaintiff complains that Defendant's general reference to the Supplemental Report, without direction as to which passages are responsive to the interrogatory, is improper and a misuse of Fed. R. Civ. P. 33(d), which provides:

> Where the answer to an interrogatory may be derived or ascertained from the business records of the party upon whom the interrogatory has been served . . . and the burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served, it is a sufficient answer to such interrogatory to specify the records from which the answer may be derived or ascertained . . . . A specification shall be in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained.

Plaintiff argues that the interrogatory seeks personal testimony from Wosick regarding events in which he personally participated, and that the answer should come in Wosick's own words rather than by reference to a document, as the interrogatory answer constitutes sworn testimony that can

6

be used for impeachment whereas a police report is generally inadmissible.  In addition, Plaintiff states that the reports attached to the interrogatory answer do not fully respond to the question asked, and he wants Wosick to "fill in the gaps."

The police report and search warrant affidavit are not completely responsive to the interrogatory.  Plaintiff alleges in his complaint that the search warrant was issued based on information provided to Wosick by the original responding officer, Officer Picchione, and that Wosick presented the judge with a warrant affidavit reflecting the false affirmations that Goodloe said the locked room was his, and that the safe inside the room contained the gun involved in the alleged domestic violence incident.  Wosick's Supplemental Report attached to his interrogatory answers contains the assertion that Goodloe told officers that the gun was in the safe and that it was "hot," although the Report also states that Goodloe later denied having said this.  With regard to information included in the search warrant affidavit, Wosick states only that "Writer wrote a search warrant for 2632 Granite NW and the locked safe in the residence."

In the search warrant affidavit, Wosick stated that he had reason to believe that a handgun or guns, used in commission of a criminal offense, were on the premises.  He says further that he learned the details of the case from the original responding officer, Officer Picchione.  Wosick further states that Goodloe told officers that the gun was in the safe and that it was "hot," that Goodloe refused to give officers the combination, and that the warrant was necessary to gain access to the safe and discover its contents.

These documents do not answer the question posed in Plaintiff's interrogatory, namely, what Wosick was told by any other officer about the ownership or occupancy of the room; in particular, whether anyone told him about a conversation between Officer Picchione and two other officers

questioning whether the room was actually Goodloe's, or someone else's.

Defendant does not object to this interrogatory and has not responded fully to the question concerning what he was told by any other officer, if anything, about the ownership/occupancy of the room. The Court directs him to do so.

Interrogatory No. 7

Plaintiff withdraws his Motion to Compel as to this interrogatory [Doc. 111, at 4].

Interrogatory No.8

In this interrogatory, Plaintiff asks whether Wosick signed a waiver of actual or potential conflicts of interest in allowing the same City attorney to represent him and all other defendants in the suit, in the event a conflict of interest arises between Wosick and the other defendants.

Wosick objected on grounds of attorney-client privilege, and on grounds of relevance. Plaintiff argues that the information is "relevant to protecting a judgment should the Plaintiff prevail and as the basis of a Dunton motion," if such becomes necessary. Plaintiff states he "continues to experience difficulty with the City Attorneys Office's simultaneous representation of all Defendants" and seeks to resolve the issue of waiver, requesting that Defendant either respond to Interrogatory No. 8 or else that the City stipulate to its fiscal responsibility for all judgments which may be rendered. Defendant counters that, if Plaintiff believes he has good cause to file a Dunton motion, he should do so, and that the filing of such a motion is not dependent upon whether or not Wosick has signed a waiver.

The Court sustains Defendant's objection. Plaintiff references Dunton v. County of Suffolk County, 729 F.2d 903 (2d Cir. 1984), which stands for the proposition that a potential conflict of interest arises when the same county attorney represents both a municipality and an individual police

officer in a post-<u>Monell</u> police misconduct case brought under § 1983.   However, this potential conflict does not compel a *per se* rule mandating separate representation.   <u>Johnson v. Board of County Commissioners</u>, 85 F.3d 489, 493 (10th Cir. 1996).   And, in any event, the interest at issue in <u>Dunton</u> is that of the individual defendant police officer.   If Plaintiff wishes to bring the potential conflict of interest to the attention of Wosick or other defendants herein, under his counsel's obligations as an officer of the Court (*see*, <u>Johnson</u>, *supra* at 494), or as a way of protecting Plaintiff's own interest in enforcing any judgment he may obtain, Defendant is correct that a <u>Dunton</u> motion may be appropriate.   As the case stands now, Wosick is justified in refusing to answer this interrogatory.

Most importantly, the interrogatory is not relevant to the claims and defenses of the parties and is therefore beyond the scope of Fed. R. Civ. P. 26.   The amendments made to Rule 26 in 2000 changed the scope of discovery from "matters relevant to the subject matter involved in the pending action" to matters "relevant to the claim or defense of any party."   *See*, <u>Sanyo Laser Products v. Arista Records, Inc.</u>, 214 F.R.D. 496 (S.D. Ind. 2003) (explaining effects of the amendment).   The advisory committee commentary makes clear that the amendment is intended to focus on the parties' actual claims and defenses rather than to develop new claims or defenses not already pleaded.   *See*, Fed. R. Civ. P. 26(b)(1) advisory committee's notes, 2000 Amendment.

The requested discovery is simply not relevant under Rule 26.

<u>Interrogatory No. 9</u>

Plaintiff withdraws his Motion to Compel as to this interrogatory [Doc. 111, at 4].

<u>Interrogatory No 10</u>

This interrogatory asks whether Wosick, his attorney or any agent of his, has interviewed and

recorded statements from any persons having knowledge of the incidents alleged in the complaint and, if so, to identify each such statement, giving specified particulars.

Wosick objected to the interrogatory on grounds of work product and attorney/client privilege. Without waiving the objections, Wosick stated that he has not interviewed any persons or taken any action other than his involvement in the events of February 19-20, 2001 as listed in police reports. Plaintiff complains that Wosick has not produced a privilege log and therefore waived his right to assert a privilege and that the answer given is not responsive to the question, which asked whether Wosick's attorney or anyone else acting on his behalf had conducted any interviews.

In addition, Plaintiff points out that the language of the interrogatory – "the incidents alleged in the complaint" – differs from Defendant's definition of the "incidents" at issue as "the events of February 19-20, 2001." The Court sustains Defendant's assertion that Plaintiff attempts to "change the entire scope of this lawsuit" [Doc. 91, at 7] by defining the "incidents" at issue to encompass any events other than the occurrences of February 19-20, 2001, the dates leading up to and including the search and seizure at issue herein.

Defendant's arguments are well-taken. Plaintiff's question is overly broad. Wosick answered this interrogatory as to himself and is not required to answer further.

However, as to any other statements for which Wosick intends to claim work product or attorney/client privilege, such statements must be identified in a <u>Vaughn</u> index[1] which Defendant shall serve on Plaintiff and which shall include a listing of the documents or portions thereof which Defendant seeks to protect, a description of the nature of these documents, their author, date of creation, and the names of any person to whom the documents were distributed. Defendant must also

---

[1]*See*, <u>Vaughn v. Rosen</u>, 484 F.2d 820 (D.C. Cir. 1973).

specify the reasons for the withholding, including a specification of the nature of the privilege claimed.

<u>Interrogatory No. 11</u>

Plaintiff in this interrogatory asks Wosick to state the names, addresses and telephone numbers of any persons with knowledge of the subject matter of the lawsuit, stating briefly the nature of such knowledge.

Defendant in his answer refers Plaintiff to the Initial Pretrial Report ("IPTR") filed in this case on July 2, 2004, stating further that he will supplement his response if additional persons are identified through discovery. Plaintiff complains that no supplementation has as yet been made. He argues that it is "public knowledge that a multitude of people are aware of APD evidence room currency handling practices," noting that the POC (Police Oversight Commission) investigation included interviews of over 50 people, and that the list of witnesses interviewed for this investigation was redacted from the POC Report. Plaintiff suggests that provision of this list would constitute a complete answer to this interrogatory.

While Defendant has provided Plaintiff with the names, addresses and telephone numbers of certain witnesses as identified in the parties' IPTR, that may not be sufficient. The IPTR does not purport to be a comprehensive listing of everyone who has discoverable information. While that was the case under the 1993 version of Rule 26, it is no longer the case. The 2000 version of the Rule now only requires disclosure of the individuals who have relevant information and upon whose testimony the party will rely in the presentation of the claim or defense.

Thus, there may be other individuals who have relevant information but who are not proposed as witnesses. Those names would not appear on the IPTR. Therefore, Defendant should now include them in his response to this interrogatory.

Defendant again raises the issue that Plaintiff's definition of the scope of the lawsuit is overly broad. The Court agrees, as discussed above in connection with Interrogatory No. 10. Defendant has provided Plaintiff with a list of the names and contact information of all persons having or purporting to have knowledge of the search and seizure events of February 19-20, 2001, as alleged in Plaintiff's complaint.

<u>Interrogatory No. 12</u>

Plaintiff withdraws his Motion to Compel as to this interrogatory [Doc. 111, at 6].

<u>Interrogatory No. 13</u>

This interrogatory asks Wosick to state the names and contact information of all witnesses who may be called to testify at trial, giving a brief description of the testimony and stating any employment or fiduciary relationship with Wosick.

Wosick responded to the interrogatory by referring Plaintiff to the IPTR, stating he would supplement the response if additional persons are identified through discovery. Plaintiff complains that the 15-month-old IPTR is "grossly out of date now in light of the intervening investigations done by City and State agencies" into the property and currency handling practices of the APD evidence room. Defendant counters that he does not yet know who will be called at trial, but he acknowledges and will abide by his duty to supplement his response.

To the extent he has not already done so and to the extent such information exists, Wosick is directed to supplement his answer to this interrogatory by providing the names of any additional persons he intends to call as witnesses at trial. He is reminded of his continuing duty to supplement responses to discovery requests.

Interrogatory No. 14

In this interrogatory, Plaintiff asks for a list of documents Wosick intends to introduce at trial. Wosick responded that he has not yet determined which exhibits will be offered at trial, but he will identify any exhibits in accord with the rules of procedure.  He also refers Plaintiff to the IPTR's identification of potential exhibits.  Plaintiff again complains that the IPTR is out of date now.

To the extent he has not already done so and to the extent such information exists, Wosick is directed to supplement his answer to this interrogatory by providing a list of any additional exhibits which he intends to introduce at trial.  He is reminded of his continuing duty to supplement responses to discovery requests.

Interrogatory No. 16

In this interrogatory, Plaintiff asks Wosick to state whether a citizen complaint or lawsuit has ever been filed against him regarding search and seizure of any kind including an allegation or finding in a criminal case that he violated a person's rights in regard to searches and seizures of property and, if so, to give details.

Wosick answers that to the best of his knowledge, there have been no complaints, allegations, or findings.  The Court determines that this response is sufficient and that no further answer is necessary.

## REQUESTS FOR PRODUCTION

Plaintiff makes the general complaint [Doc. 71, at 10] that the documents Wosick has produced in response to these requests have not been indexed – that is, he has not indicated the particular request to which each document is supposed to be responsive.  The Court orders Wosick to provide this information.

<u>Request No. 1</u>

In this request, Plaintiff asks Wosick to provide all documents he consulted or relied on to respond to the interrogatories or Requests for Production.

Wosick objected on grounds the request is vague, overly broad and may call for documents which are protected by attorney/client or work product privilege.  Although it is unclear, Wosick also seems to be generally incorporating by reference all objections he may make to other requests for production.

Plaintiff argues that the request is not vague in that, "if Defendant Wosick consulted documents, he ought to know what he consulted if, in fact, the responses were prepared by him." [Doc. 71, at 10].  Wosick replies that he did, in fact, attach to his interrogatory answers the documents he relied on, including a police report, evidence tags, and applicable policies.  He asserts that the request for "all documents you consulted or relied upon" is overly broad, and the Court agrees.  Wosick need not provide any document he consulted, if he did not rely on it.  The Court accepts Defendant's statement that he has now provided all documents he relied upon.

<u>Requests Nos. 4, 5 and 8</u>

In Request No. 4, Plaintiff asks Wosick to provide copies of all internal investigations of all citizen complaints against him, and the disposition of such complaints.   Request No. 5 asks him to provide copies of all grievances, reports, internal investigations or other forms of complaint concerning Wosick as a law enforcement officer, for the preceding ten years and relating to search and seizure practice, evidence handling, property forfeiture and retention and other related matters. Request No. 8 asks Wosick to provide a copy of his personnel file for the preceding ten years, including certain specified information.

14

Wosick objects to these three requests on grounds they are overly broad, irrelevant, and violative of his constitutional right to privacy.  Without waiving these objections, Wosick states he will agree to produce his Internal Affairs file in response to Requests Nos. 4 and 5, and his personnel file in response to Request No. 8, to the undersigned magistrate judge for an *in camera* inspection to ensure that no irrelevant, prejudicial or privileged matters, or those which are entitled to a reasonable expectation of privacy, are disclosed.  He states he will provide the Court and Plaintiff with a <u>Vaughn</u> index consisting of a written list of documents with Bates numbers, identifying the objections to production and privileges claimed.  He seeks a protective order limiting disclosure of any materials produced, in a form agreeable to the parties.  In addition, he "reserves the right to object" to disclosure of irrelevant or prejudicial documents, documents subject to work product or attorney-client privilege, or those protected by an officer's right of privacy, and further reserve the right to make additional objections "as these documents become known to Defendant."

Plaintiff argues that he is attempting to establish the policies and procedures used by APD in relation to seized citizen properties, and that these documents are relevant to that portion of the lawsuit.  Plaintiff further asserts that Wosick has no legitimate privacy interest in keeping allegations of his own misconduct from discovery, and that the information sought is relevant to Plaintiff's claims of municipal and supervisory liability.

Defendant counters that he "stands ready" to provide his internal affairs and personnel files to the Court for *in camera* inspection, under the conditions outlined above.

The Tenth Circuit recognizes that individual police officers have a right to maintain the confidentiality of personal data contained in their personnel files.  <u>Denver Policemen's Protective Ass'n v. Lichtenstein</u>, 660 F.2d 432 (10th Cir. 1981).  "[p]ublic officials . . . are not wholly without

15

constitutionally protected privacy rights in matters of personal life unrelated to any acts done by them in their public capacity." Id., at 435, *quoting from* Nixon v. Admin'r of Gen. Services, 433 U.S. 425, 457, 97 S. Ct. 2777, 2797 (1977).

However, where the documents do not contain personal data but are "related simply to the officers' work as police officers," the information is not protected from disclosure in a civil lawsuit by considerations of privacy. Lichtenstein, at 435. As the Tenth Circuit held elsewhere, there is "no absolute right to privacy in the contents of personnel files. Only highly personal information is protected." Flanagan v. Munger, 890 F.2d 1557, 1570 (10th Cir. 1989). *See also*, Mason v. Stock, 869 F. Supp. 828, 833 (D. Kan. 1994) (the privacy interests of police officers should be limited in view of their positions as public servants). And "[even] a legitimate expectation of privacy . . . may be overridden by a compelling state interest." Lichtenstein, at 436. In the context of discovery in a Section 1983 action, the court noted:

> The compelling state interest involved here is the ascertainment of the truth . . . . [I]t is of special import that suits brought under this statute [*i.e.*, Section 1983] be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden.

Id.

It is clear that personnel records contain a plethora of information that may not be relevant to the parties' claims and defenses, and production of that information would not lead to the discovery of relevant, admissible evidence. For example, the personnel files likely include Social Security numbers, dates of birth, medical information and other critical, personal information which if improperly disclosed and distributed could cause difficulties. Similarly, disclosure and public dissemination of an officer's home address and home telephone number could result in safety and

security issues for an officer or his or her family.  Personnel records also include health information,

school transcripts, leave slips, elections in connection with various job benefits, and much other

information that simply isn't relevant to any claim or defense in this case.  *See* Fed. R. Civ. P. 26.

As is true with personnel files, investigative and internal affairs files may contain personal

data, such as an officer's home address or perhaps a psychological evaluation, which could give rise

to a right of confidentiality.  But, as noted above, this right to confidentiality is not absolute and may

be overridden by a compelling state interest such as "ascertainment of the truth" in civil litigation.

Lichtenstein, at 436.  Given the "broad federal mandate for discovery in all civil actions," Wood v.

Breier, 54 F.R.D. 7, 10 (E.D. Wis. 1972), "[t]he police must make a 'substantial threshold showing'

. . . that there are specific harms likely to accrue from disclosure of specific materials . . . .  [T]he

burden of persuasion rests on the party seeking to prevent disclosure."  King, at 189, 191.  In

addition, "Section 1983 represents a balancing feature in our governmental structure whereby

individual citizens are encouraged to police those who are charged with policing us all."  Wood, at

10.  Thus, the Court will carefully scrutinize the claims that documents be withheld.  Defendants'

arguments for nondisclosure "must be so meritorious as to overcome the fundamental importance of

a law meant to insure each citizen from unconstitutional state action and of the federal rules of

discovery meant to insure that no relevant fact remain hidden."  Id., at 13.

The Court finds that some of the material sought in these requests is relevant to Plaintiff's

claims of individual and municipal liability.  Plaintiff alleges in his complaint that certain supervisory

defendants, as well as the municipal defendant, are liable for maintaining policies regarding search and

seizure, and retention of seized property which violate Plaintiff's constitutional rights, and that these

defendants knew of and approved of these unconstitutional policies or ratified them and, in addition,

17

the City failed adequately to train and supervise its police personnel and city attorneys.  Plaintiff

seeks, among other relief, punitive damages based on allegations that defendants acted intentionally

and wantonly, with deliberate indifference to the constitutional rights of the public, including Plaintiff.

Such claims require that Plaintiff show a widespread custom or practice on the part of the

municipal defendant, carried out with the requisite degree of culpability, and demonstrate "a direct

causal link between the municipal action and deprivation of federal rights."  Barney v. Pulsipher, 143

F.3d 1299, 1307 (10th Cir. 1998).  And municipal liability can be predicated on the municipality's

deliberate indifference in the face of actual or constructive knowledge of past acts of misconduct by

the officer.  Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 117 S. Ct. 1382

(1997).

Some of the records sought are, therefore, relevant to the claims and defenses in this case, and

these requests for production will be fully answered if Wosick provides his personnel and internal

affairs files, as agreed.   However, the Court also recognizes Wosick's legitimate privacy right in

certain portions of these files and will order that the documents be produced under the following

conditions.

All portions of these files to which Wosick does not assert a privilege or privacy right are to

be produced directly to Plaintiff within ten days of the date this Order is filed, and subject to a

protective order.  As the parties have not agreed to the terms of a protective order, the Court includes

a protective order at the end of this Memorandum Opinion.  This protective order will be applicable

to any information disclosed if the Court refers to the protective order in directing disclosure.

Wosick shall produce the remainder of his personnel and internal affairs files to the Court for

an *in camera* review.  To the extent he claims that any portions of the files are either:  (1) personal

data, unrelated to his work as a police officer; or (2) protected by privileges including attorney-client, attorney work product, or any other privilege, Wosick shall submit a Vaughn index to the Court and serve the index on Plaintiff's counsel.

The Vaughn index shall include a listing of the portions of the Bates-stamped documents which Defendant seeks to protect, a description of the nature of these portions, their author, date of creation, and the names of any persons to whom the portions were distributed.  Counsel must also specify the reasons for the withholding, including a specification of the nature of the privilege claimed, if any.  The Court will make rulings on any asserted privileges once it has reviewed the documents, along with the Vaughn index.  Following its review, the Court will issue a supplementary order detailing whether any of the information submitted should be produced to Plaintiff.

While Plaintiff is entitled to fair discovery, the ten-year time frame for which information is sought is not reasonable, and the Court will limit the time period to material covering the preceding five years.  In related civil rights litigation in the employment area under Title VII of the Civil Rights Act of 1964, courts have imposed various lengths of time prior to the alleged discriminatory acts where discovery was reasonable.   In LaFave v. Symbios, Inc., 2000 WL 1644154 (D. Colo. 2000), the court determined that discovery for the period five years before the alleged act was reasonable. In James v. Newspaper Agency Corp., 591 F.2d 579 (10th Cir. 1979), four years prior to the liability period was deemed appropriate.  In EEOC v. Kansas City S. Ry., 195 F.R.D. 678, 679-80 (D. Kan. 2000), a three year period prior to the alleged act was approved.  So, too, in Lyoch v. Anheuser-Busch Cos., 164 F.R.D. 62, 70 (E.D. Mo. 1995), five years prior to the alleged civil rights violation was deemed reasonable.

To the extent that Wosick is "reserving the right" to impose later or additional claims of

privilege, the Court advises Defendant that this is improper.   Any documents or portions of documents as to which Wosick wishes to assert a privilege must be provided to the Court, along with a <u>Vaughn</u> index.   The final privilege determination will be made by the Court.   This directive applies to all of the discovery requests discussed herein.

In addition, Wosick states in his answer to this request that he "reserves the right to redact" home addresses and social security numbers of any police officer identified in the internal affairs files, or of any non-party citizens.   Redaction of the police officers' home addresses and social security numbers is permissible; however, Wosick may not redact addresses of "non-party citizens" who may have information relevant to the case and whom Plaintiff may need to contact.

<u>Requests Nos. 6 and 7</u>

In Request No. 6, Plaintiff asks for all documents reasonably available which Wosick intends to use to support his case, including impeachment and rebuttal documents.   In Request No. 7, he asks for copies of any documents Wosick intends to use or might use to impeach any witnesses.

Wosick responds that he has not yet identified all such documents, but that in the IPTR he previously identified those documents known to him, and he will supplement this response as additional documents become known.

Plaintiff complains that these are insufficient responses, and that "[s]urely Defendant has made some preparation for trial after 17 months in litigation" and should be compelled to provide whatever he has identified up to the present time.   Defendant counters that he has not yet determined which documents he intends to use at trial, for impeachment or otherwise, as the parties are still in discovery and "the case is evolving."

The Court finds that Wosick's responses answer the questions asked.   The Court reminds

Wosick of his continuing to duty to supplement his answers to Plaintiff's discovery requests to provide Plaintiff with all material to which no objection has been raised, as soon as the material becomes available.

Plaintiff requests that the Court impose evidentiary sanctions on Wosick for delay and obstruction. The Court does not find evidentiary sanctions to be appropriate in this case.

## Order

IT IS THEREFORE ORDERED that Plaintiff's Motion to Compel [Doc. 70] directed to Defendant Michael Wosick is granted in part and denied in part, as detailed above. All discovery ordered herein shall be made within ten days of the date of this Order.

IT IS FURTHER ORDERED that the disclosures ordered herein shall be made subject to a **Protective Order** to ensure confidentiality of sensitive information, the terms of which are as follows:

1. Defendant Wosick (hereinafter referred to as the "Defendant Officer") shall produce to Plaintiff's counsel a copy of those portions of his personnel files and internal affairs files which the Defendant Officer does not contend are privileged from disclosure, within ten (10) days of the date of this Order.

2. Defendant Officer shall produce to Chief United States Magistrate Judge Lorenzo F. Garcia a copy of those portions of his personnel files and internal affairs files which Defendant Officer contends are privileged from disclosure, along with a Vaughn index as described below. The Court will then conduct an *in camera* inspection to ensure that neither privileged matters nor information which is entitled to a reasonable expectation of privacy is disclosed. Defendant Officer shall produce these portions of his personnel files and internal affairs files within ten (10) days of the date of this Order.

3. Along with the files, Defendant Officer shall submit to the Court and serve on Plaintiff's counsel a Vaughn index, which shall include a listing of the portions of the documents which Defendant seeks to protect, a description of the nature of these portions, their author, date of creation, and the names of any persons to whom the portions were distributed. Counsel must also specify the reasons for the withholding, including a specification of the nature of the privilege claimed, if any.

4.  Plaintiff and Plaintiff's counsel shall hold these personnel and internal affairs files in the strictest of confidence, store the files securely, and use the files solely for the purposes of this litigation.

5.  Plaintiff and Plaintiff's counsel shall not disclose or produce these personnel and internal affairs files to any non-party at any time except for police procedures experts retained by Plaintiff in this matter and for use as exhibits at trial.

6.  Plaintiff and Plaintiff's counsel shall accept responsibility for limiting access to these personnel and internal affairs files to those qualified persons (attorneys, associates, staff/employees who are working on the litigation, and Plaintiff's police procedures experts) who are authorized to receive the files under a Protective Order.

7.  Plaintiff and Plaintiff's counsel agree to return to Defendant Officer his personnel and internal affairs files produced under this Protective Order within thirty (30) days of the resolution of this case.

8.  Plaintiff and Plaintiff's counsel agree to purge all copies of Defendant Officer's personnel and internal affairs files from Plaintiff's and Plaintiff's attorney's files at the resolution of this lawsuit.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
Chief United States Magistrate Judge

22