IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


CHRIS JONES,

        Plaintiff,

vs.                                       No. CIV 04-174 JH/LFG

THE CITY of ALBUQUERQUE; OFFICER
STEVE PICCHIONE, OFFICER WOSICK,
OFFICER MASON, OFFICER MOCK, SGT. HEH,
ALBUQUERQUE POLICE DEPARTMENT,
in their official and individual capacities;
GILBERT GALLEGOS, ALBUQUERQUE CHIEF
of POLICE, ROBERT WHITE, ALBUQUERQUE
CITY ATTORNEY, in their official and individual
capacities; and DONALD HARRIS, ALBUQUERQUE
ASSISTANT CITY ATTORNEY, in his official and
individual capacities,

        Defendants.


**MEMORANDUM OPINION AND ORDER**
**ON PLAINTIFF'S MOTION TO COMPEL**
**DIRECTED TO DEFENDANT STEVE PICCHIONE**

THIS MATTER comes before the Court on Plaintiff Chris Jones ("Jones")'s Motion to Compel Defendant Steve Picchione ("Picchione") to provide answers to Interrogatories and Requests for Production [Doc. 80], filed herein on July 13, 2005. Picchione filed his Response [Doc. 93] on August 5, 2005, and Plaintiff filed his Reply [Doc. 109] on August 29, 2005. The motion is now fully briefed. No oral argument is necessary. For the reasons given below, the Motion to Compel is granted in part and denied in part.

The allegations of Plaintiff's complaint and other factual and procedural matters in this case are set forth in the Court's Memorandum Opinion and Order on Plaintiff's earlier Motion [Doc. 70] to Compel Defendant Wosick to respond to discovery requests, and will be referred to herein only as necessary to discussion of the issues.

Jones served the various Defendants with discovery requests, beginning in September 2004. Defendant Picchione served his initial responses on February 16, 2005, with a supplemental response to the interrogatories on April 26, 2005.  Plaintiff states that Picchione was the only Defendant to file a formal supplemental response.   Plaintiff's attorneys were dissatisfied with the Defendants' responses, and counsel states in the motion that they made several attempts to confer with defense counsel, including a "formal good-faith letter," dated March 21, 2005.  Finding no satisfaction in these attempts to resolve the parties' discovery dispute, Jones now files this Motion to Compel.

## Discussion

Jones asserts that Picchione provided incomplete and non-responsive answers to his Interrogatories and Requests for Production, making conclusory and unjustified objections to the discovery requests and failing to support his claims for privilege and privacy with a privilege log.  He seeks a Court order directing Picchione to fully respond and asks as well for unspecified sanctions against Picchione.

Picchione asserts that, counting all sub-parts, Plaintiff's interrogatories exceed the numerical limits.  He further claims that, notwithstanding this, his answers constituted good-faith attempts to respond to the discovery requests, many of which were, he asserts, vague, irrelevant and overly broad.  He argues that there is no basis for imposing sanctions on him.

The federal rules provide for broad and liberal discovery.  Fed. R. Civ. P. 26 allows each party

to obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.   To be discoverable, the information need not be admissible at trial so long as it appears reasonably calculated to lead to discovery of admissible evidence.

While this language is broad, the scope of allowable discovery is not without limits.  In considering motions to compel, the Court may properly balance the needs and interests of the parties and may limit discovery where the benefit is minimal and the burdens of production are great.  <u>Koch v. Koch Indus., Inc.</u>, 203 F.3d 1202, 1238 (10th Cir. 2000); Fed. R. Civ. P. 26(b)(2).

With these principles in mind, the Courts turns to an examination of the disputed Interrogatories and Requests for Production, as well as the appropriate form of protective order in this case.

<u>INTERROGATORIES</u>

As noted above, Picchione contends in his Response brief to Plaintiff's Motion to Compel that the number of interrogatories exceeds the maximum limit.  This assertion was not made as an objection to answering any specific interrogatory, and the Court will not consider an objection raised for the first time in Defendant's briefing on the motion.

<u>Interrogatory No. 6</u>

In this interrogatory, Plaintiff asks Picchione to state whether he participated in providing information for the search warrant affidavit and, if so, to state exactly what he told the affiant as a basis for the affidavit, including whether or not he related his conversation with Sgt. Heh and Officer Mason as to whether the locked room was actually Rodney Goodloe's or Terry Jones's room.

Picchione objected, stating that the interrogatory mischaracterizes his conversation with Sgt. Heh or Officer Mock.  In spite of the objections, he states further that the information which he

3

provided for the search warrant affidavit "is the information and statements attributed to him in the search warrant affidavit."

Plaintiff argues that he needs information beyond that set forth in the search warrant affidavit – that is, Picchione's "own testimony as to the contents of the search warrant affidavit – because he alleges in the complaint that certain factual information in the affidavit was falsified. Picchione responds by reiterating that "the information he provided for the search warrant affidavit is, in fact, the information and statements attributed to him in the affidavit. That is 'his own testimony.'"

Defendant Wosick is the author of the search warrant affidavit. The affidavit is attached as an exhibit to Wosick's Response [Doc. 91] to Plaintiff's Motion to Compel discovery responses from him. Wosick states in the affidavit that he "learned the details of the case from the original responding officer (S. Picchione, 2554)," and he then proceeds to recite these details.

The Court is inclined to simply accept Picchione's response to this interrogatory that the information Plaintiff seeks is what is set forth in the affidavit. However, Plaintiff's complaint includes allegations that, prior to the drafting of the warrant affidavit, Picchione had a discussion with other officers in which they expressed concern that the locked bedroom was actually "the wrong room" – *i.e.,* that it had no connection to Goodloe, the suspect in the domestic violence incident. Such a conversation, if it occurred, would be relevant to the claims and defenses in this case.

Picchione is directed to respond to the interrogatory by stating specifically whether or not he had a conversation with Sgt. Heh and Officer Mason as to whether the locked room was actually Rodney Goodloe's or Terry Jones's room, and if so, what he told Wosick, if anything, about this conversation.

Interrogatory No. 10

In this interrogatory, Plaintiff asks Picchione to state his understanding of City of Albuquerque ("City") police procedures regarding obtaining consent to search a residence and entry into a locked room pursuant to an arrest, identifying which procedures were used and which actions taken toward Goodloe and/or Summerville were not justified by any procedure.

Picchione responded by providing copies of APD Procedural Orders 2-16.   In his supplemental answers, Picchione stated that these Standard Operating Procedures dealt with execution of search warrants and consensual searches.

Plaintiff complains that this answer is not responsive, as the interrogatory asked Picchione to state his personal understanding of the applicable procedures concerning consent searches and entry into a locked room, and to state whether these procedures were or were not followed during the February 19-20, 2005.  Defendant counters that he cannot understand what more Plaintiff wants.

The Court sustains the Defendant's objection.  The interrogatory as drafted is vague and confusing, and the response made appears adequate.  No further response is necessary.

Interrogatory No. 13

This interrogatory asks Picchione to state the names and contact information for any person having knowledge of the subject matter of the lawsuit and the chain of custody of the $10,000 from the time it was seized from his bedroom to the present, and state briefly the substance of such knowledge.

Picchione answered by referring Plaintiff to the Initial Pretrial Report ("IPTR") on file in this case, stating he would supplement the response if additional persons are identified through discovery. Plaintiff complains that no supplementation has as yet been made.  He argues that it is "public

knowledge that a multitude of people are aware of APD evidence room currency handling practices," noting that the POC (Police Oversight Commission) investigation included interviews of over 50 people, and that the list of witnesses interviewed for this investigation was redacted from the POC Report. Plaintiff suggests that provision of this list would constitute a complete answer to this interrogatory.

Defendant counters that the interrogatory is directed to one patrol officer, and he cannot be expected to "respond to policy questions or all of the issues Plaintiff references regarding evidence issues." Plaintiff argues in response that the interrogatory seeks information regarding the chain of custody, and that Picchione's identity as the seizing officer gave him initial responsibility for the chain of custody and also gave him authority to release the seized currency; "Plaintiff only seeks who Defendant Picchione believes might know about his money in Defendant Picchione's capacity as the person who seized it, initially logged it and had the authority to release it."

While Defendant has listed the names, addresses and telephone numbers of the individuals Defendant expects to present at trial, the IPTR does not necessarily identify all individuals who may have knowledge. The IPTR does not purport to be a comprehensive listing of everyone who has discoverable information. While that was the case under the 1993 version of Rule 26, it is no longer the case. The 2000 version of the Rule now only requires disclosure of the individuals who have relevant information and upon whose testimony the party will rely in the presentation of the claim or defense. Thus, there may be other individuals who have relevant information but who are not proposed as witnesses. Those names would not appear on the IPTR. Therefore, Defendant shall provide Plaintiff with a listing of names and contact information for those persons who have knowledge of the search and seizure events of February 19-20, 2001 as alleged in Plaintiff's

complaint.

Interrogatory No. 14

In this interrogatory, Plaintiff asks Picchione to identify all expert witnesses he may call at trial, including specified information as to each such expert.  Defendant responds by stating that no determination has yet been as made as to expert witnesses, and in his Response to Plaintiff's Motion (dated August 5, 2005), he asserts that Plaintiff had only just served his expert report, that Defendant's expert report was not due until August 29, and that he will comply with the Court's order regarding scheduling of expert reports.  The Court assumes that he has done so.  If it has not, Plaintiff may have grounds for a motion to exclude Defendant's expert testimony.

Interrogatory Nos. 15 and 16

Interrogatory No. 15 asks Picchione to state the names and contact information of all witnesses who may be called to testify at trial, giving a brief description of the testimony and stating any employment or fiduciary relationship with Picchione.  Interrogatory No. 16 asks for a list of documents Picchione intends to introduce at trial.

Picchione responded to the interrogatories by referring Plaintiff to the IPTR, stating he would supplement the response if additional witnesses or exhibits are identified through discovery.  He asserts that he does not yet know who will be called at trial or what exhibits he will present, but he acknowledges and will abide by his duty to supplement his response.

To the extent he has not already done so and to the extent such information exists, Picchione is directed to supplement his answer to this interrogatory by providing a list of the names of any additional persons he intends to call as witnesses and any additional exhibits which he intends to introduce at trial.  He is reminded of his continuing duty to supplement responses to discovery

requests.

Interrogatory No. 17

Plaintiff withdraws his Motion to Compel as to this interrogatory [Doc. 109, at 6-7].

Interrogatory No. 18

Plaintiff did not attach a copy of this interrogatory to his Motion to Compel, in violation of local rule D.N.M.LR-Civ. 37.1.  In his Motion, he states that the interrogatory asked Picchione whether he was contacted by former Assistant City Attorney Ron Bratton regarding the seized currency, and what ensued.  He says that Picchione asserted attorney-client privilege as to this question but did not provide a privilege log and therefore waived his right to assert the privilege.  He also says that Picchione has declined to say whether Mr. Bratton was his counsel, but it is unclear whether this question formed part of the interrogatory.

The "fact" of contact is not privileged, but the content of the discussion is privileged. Defendant is to answer whether or not he was contacted by the City's attorney, but he need not disclose the content of the discussion.

Interrogatory No. 20

In this interrogatory, Plaintiff asks whether Picchione signed a waiver of actual or potential conflicts of interest in allowing the same City attorney to represent him and all other defendants in the suit, in the event a conflict of interest arises as between Picchione and the other defendants.

Picchione objected on grounds of attorney-client privilege, and on grounds of relevance. Plaintiff argues that the information is "relevant to protecting a judgment should the Plaintiff prevail and as the basis of a Dunton motion," if such becomes necessary.  Plaintiff states he "continues to experience difficulty with the City Attorneys Office's simultaneous representation of all Defendants."

8

Defendant counters that, if Plaintiff believes he has good cause to file a <u>Dunton</u> motion, he should do so, and that the filing of such a motion is not dependent upon whether or not Picchione has signed a waiver.

The Court sustains Defendant's objection. Plaintiff references <u>Dunton v. County of Suffolk County</u>, 729 F.2d 903 (2d Cir. 1984), which stands for the proposition that a potential conflict of interest arises when the same county attorney represents both a municipality and an individual police officer in a post-<u>Monell</u> police misconduct case brought under § 1983. However, this potential conflict does not compel a *per se* rule mandating separate representation. <u>Johnson v. Board of County Commissioners</u>, 85 F.3d 489, 493 (10th Cir. 1996). And, in any event, the interest at issue in <u>Dunton</u> is that of the individual defendant police officer. If Plaintiff wishes to bring the potential conflict of interest to the attention of Picchione or other defendants herein, under his counsel's obligations as an officer of the Court (*see*, <u>Johnson</u>, *supra* at 494), or as a way of protecting Plaintiff's own interest in enforcing any judgment he may obtain, Defendant is correct that a <u>Dunton</u> motion may be appropriate. As the case stands now, Picchione is justified in refusing to answer this interrogatory.

Most importantly, the interrogatory is not relevant to the claims and defenses of the parties and is therefore beyond the scope of Fed. R. Civ. P. 26. The amendments made to Rule 26 in 2000 changed the scope of discovery from "matters relevant to the subject matter involved in the pending action" to matters "relevant to the claim or defense of any party." *See*, <u>Sanyo Laser Products v. Arista Records, Inc.</u>, 214 F.R.D. 496 (S.D. Ind. 2003) (explaining effects of the amendment). The advisory committee commentary makes clear that the amendment is intended to focus on the parties' actual claims and defenses rather than to develop new claims or defenses not already pleaded. *See*,

9

Fed. R. Civ. P. 26(b)(1) advisory committee's notes, 2000 Amendment.

The requested discovery is simply not relevant under Rule 26.

Interrogatory No. 21

In this interrogatory, Plaintiff asks Picchione to state whether a citizen complaint or lawsuit has ever been filed against him regarding search and seizure of any kind including an allegation or finding in a criminal case that he violated a person's rights in regard to searches and seizures of property and, if so, to give details.

Picchione answers that to the best of his knowledge, there have been no complaints, allegations, or findings.  The Court determines that this response is sufficient and no further response is necessary.

Interrogatory No. 24

This interrogatory reads as follows

> Please identify, based on your own personal knowledge, all City of Albuquerque police procedures which were utilized during the entire span of time Rodney Goodloe and / or David Summerville were in the presence of City of Albuquerque police or public safety officers on February 19-20, 2001, including the specific procedure(s) and how said procedures applied to Rodney Goodloe's and / or David Summerville's given situation; and what action taken with regard to Rodney Goodloe and / or David Summerville on those procedures. If no procedure justified certain actions taken towards Rodney Goodloe and / or David Summerville during that time, then identify which actions taken were not justified by any procedure.

Picchione objects to the interrogatory as overly broad, unduly burdensome, and vague.  The Court agrees and finds the interrogatory, as drafted, to be vague and confusing.  In his Memorandum in Support, Plaintiff states that the interrogatory asks for Picchione's personal knowledge of all procedures used during the February 19-20 incident, and Picchione's perception as to whether these

10

procedures were justified.

Defendant did not respond to the Motion with regard to this Interrogatory, and Plaintiff argues that he has therefore abandoned his objections. Having been lenient with Plaintiff in connection with his failure to attach to his Motion copies of all interrogatories at issue, the Court will be lenient with Defendant as to this apparent oversight. The Court takes into account the argument raised in Defendant Mason's Response [Doc. 97, at 5] to Plaintiff's Motion to Compel, in connection with a substantially similar interrogatory, wherein Mason argues that the phrase "all" police procedures is vague and overly broad, as it could cover any action from responding to dispatch, to the place where cars are to be parked, to who is responsible for a report.

While Plaintiff's re-description of the interrogatory in his Memorandum clarifies the matter somewhat, Picchione was justified in objecting on grounds of vagueness; the Court cannot see how Defendant could reasonably have responded to this interrogatory as originally phrased. In addition, even with the clarifications, the interrogatory is overly broad. The Motion to Compel is denied as to this interrogatory.

<u>REQUESTS FOR PRODUCTION</u>

Plaintiff makes the general complaint [Doc. 81, at 10-11] that the documents Picchione has produced in response to these requests have not been indexed – that is, he has not indicated the particular request to which each document is supposed to be responsive. The Court orders Picchione to provide this information.

<u>Request No. 1</u>

In this request, Plaintiff asks Picchione to provide all documents he consulted or relied on to respond to the interrogatories or Requests for Production.

11

Picchione objected on grounds the request is vague, overly broad and may call for documents which are protected by attorney/client or work product privilege. Although it is unclear, Picchione also seems to be generally incorporating by reference all objections he may make to other requests for production.

Plaintiff argues that the request is not vague in that, "if Defendant Picchione consulted documents, he ought to know what he consulted if, in fact, the responses were prepared by him." [Doc. 81, at 10]. Picchione replies that the request for "all documents you consulted or relied upon" is overly broad, and the Court agrees. He need not provide any document he consulted, if he did not rely on it. However, he must produce all documents relied upon.

Requests Nos. 4, 5 and 8

In Request No. 4, Plaintiff asks Picchione to provide copies of all internal investigations of all citizen complaints against him, and the disposition of such complaints. Request No. 5 asks him to provide copies of all grievances, reports, internal investigations or other forms of complaint concerning Picchione as a law enforcement officer, for the preceding ten years and relating to search and seizure practice, evidence handling, property forfeiture and retention and other related matters. Request No. 8 asks Picchione to provide a copy of his personnel file for the preceding ten years, including certain specified information.

Picchione objects to these three requests on grounds they are overly broad, irrelevant, and violative of his constitutional right to privacy. Without waiving these objections, Picchione states he will agree to produce his Internal Affairs file in response to Requests Nos. 4 and 5, and his personnel file in response to Request No. 8, to the undersigned magistrate judge for an *in camera* inspection to ensure that no irrelevant, prejudicial or privileged matters, or those which are entitled to a

reasonable expectation of privacy, are disclosed.  He states he will provide the Court and Plaintiff with a <u>Vaughn</u> index consisting of a written list of documents with Bates numbers, identifying the objections to production and privileges claimed.  He seeks a protective order limiting disclosure of any materials produced, in a form agreeable to the parties.  In addition, he "reserves the right to object" to disclosure of irrelevant or prejudicial documents, documents subject to work product or attorney-client privilege, or those protected by an officer's right of privacy, and further reserve the right to make additional objections "as these documents become known to Defendant."

Plaintiff argues that he is attempting to establish the policies and procedures used by APD in relation to seized citizen properties, and that these documents are relevant to that portion of the lawsuit.  Plaintiff further asserts that Picchione has no legitimate privacy interest in keeping allegations of his own misconduct from discovery, and that the information sought is relevant to Plaintiff's claims of municipal and supervisory liability.

Defendant counters that he "stands ready" to provide his internal affairs and personnel files to the Court for *in camera* inspection, under the conditions outlined above.

The Tenth Circuit recognizes that individual police officers have a right to maintain the confidentiality of personal data contained in their personnel files.  <u>Denver Policemen's Protective Ass'n v. Lichtenstein</u>, 660 F.2d 432 (10th Cir. 1981).  "[p]ublic officials . . . are not wholly without constitutionally protected privacy rights in matters of personal life unrelated to any acts done by them in their public capacity." <u>Id.</u>, at 435, *quoting from* <u>Nixon v. Admin'r of Gen. Services</u>, 433 U.S. 425, 457, 97 S. Ct. 2777, 2797 (1977).

However, where the documents do not contain personal data but are "related simply to the officers' work as police officers," the information is not protected from disclosure in a civil lawsuit

13

by considerations of privacy. <u>Lichtenstein</u>, at 435. As the Tenth Circuit held elsewhere, there is "no absolute right to privacy in the contents of personnel files. Only highly personal information is protected." <u>Flanagan v. Munger</u>, 890 F.2d 1557, 1570 (10th Cir. 1989). *See also*, <u>Mason v. Stock</u>, 869 F. Supp. 828, 833 (D. Kan. 1994) (the privacy interests of police officers should be limited in view of their positions as public servants). And "[even] a legitimate expectation of privacy . . . may be overridden by a compelling state interest." <u>Lichtenstein</u>, at 436. In the context of discovery in a Section 1983 action, the court noted:

> The compelling state interest involved here is the ascertainment of the truth . . . . [I]t is of special import that suits brought under this statute [*i.e.*, Section 1983] be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden.

<u>Id</u>.

It is clear that personnel records contain a plethora of information that may not be relevant to the parties' claims and defenses, and production of that information would not lead to the discovery of relevant, admissible evidence. For example, the personnel files likely include Social Security numbers, dates of birth, medical information and other critical, personal information which if improperly disclosed and distributed could cause difficulties. Similarly, disclosure and public dissemination of an officer's home address and home telephone number could result in safety and security issues for an officer or his or her family. Personnel records also include health information, school transcripts, leave slips, elections in connection with various job benefits, and much other information that simply isn't relevant to any claim or defense in this case. *See* Fed. R. Civ. P. 26.

As is true with personnel files, investigative and internal affairs files may contain personal data, such as an officer's home address or perhaps a psychological evaluation, which could give rise

14

to a right of confidentiality. But, as noted above, this right to confidentiality is not absolute and may be overridden by a compelling state interest such as "ascertainment of the truth" in civil litigation. Lichtenstein, at 436. Given the "broad federal mandate for discovery in all civil actions," Wood v. Breier, 54 F.R.D. 7, 10 (E.D. Wis. 1972), "[t]he police must make a 'substantial threshold showing' . . . that there are specific harms likely to accrue from disclosure of specific materials . . . . [T]he burden of persuasion rests on the party seeking to prevent disclosure." King, at 189, 191. In addition, "Section 1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all." Wood, at 10. Thus, the Court will carefully scrutinize the claims that documents be withheld. Defendants' arguments for nondisclosure "must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action and of the federal rules of discovery meant to insure that no relevant fact remain hidden." Id., at 13.

The Court finds that some of the material sought in these requests is relevant to Plaintiff's claims of individual and municipal liability. Plaintiff alleges in his complaint that certain supervisory defendants, as well as the municipal defendant, are liable for maintaining policies regarding search and seizure and retention of seized property which violate Plaintiff's constitutional rights, and that these defendants knew of and approved of these unconstitutional policies or ratified them and, in addition, the City failed adequately to train and supervise its police personnel and city attorneys. Plaintiff seeks, among other relief, punitive damages based on allegations that defendants acted intentionally and wantonly, with deliberate indifference to the constitutional rights of the public, including Plaintiff.

Such claims require that Plaintiff show a widespread custom or practice on the part of the municipal defendant, carried out with the requisite degree of culpability, and demonstrate "a direct

causal link between the municipal action and deprivation of federal rights." <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1307 (10th Cir. 1998). And municipal liability can be predicated on the municipality's deliberate indifference in the face of actual or constructive knowledge of past acts of misconduct by the officer. <u>Board of County Comm'rs of Bryan County v. Brown</u>, 520 U.S. 397, 117 S. Ct. 1382 (1997).

Some of the records sought are, therefore, relevant to the claims and defenses in this case, and these requests for production will be fully answered if Picchione provides his personnel and internal affairs files, as agreed. However, the Court also recognizes Picchione's legitimate privacy right in certain portions of these files and will order that the documents be produced under the following conditions. All portions of these files to which Picchione does not assert a privilege or privacy right are to be produced directly to Plaintiff within ten days of the date this Order is filed, and subject to a protective order. As the parties have not agreed to the terms of a protective order, the Court includes a protective order at the end of this Memorandum Opinion. This protective order will be applicable to any information disclosed, the Court refers to the protective order in directing disclosure.

Picchione shall produce the remainder of his personnel and internal affairs files to the Court for an *in camera* review. To the extent he claims that any portions of the files are either: (1) personal data, unrelated to his work as a police officer; or (2) protected by privileges including attorney-client, attorney work product, or any other privilege, Picchione shall submit a <u>Vaughn</u> index to the Court and serve the index on Plaintiff's counsel.

The <u>Vaughn</u> index shall include a listing of the portions of the Bates-stamped documents which Defendant seeks to protect, a description of the nature of these portions, their author, date of

16

creation, and the names of any persons to whom the portions were distributed.  Counsel must also specify the reasons for the withholding, including a specification of the nature of the privilege claimed, if any.  The Court will make rulings on any asserted privileges once it has reviewed the documents, along with the <u>Vaughn</u> index.  Following its review, the Court will issue a supplementary order detailing whether any of the information submitted should be produced to Plaintiff.

While Plaintiff is entitled to fair discovery, the ten-year time frame for which information is sought is not reasonable, and the Court will limit the time period to material covering the preceding five years.  In related civil rights litigation in the employment area under Title VII of the Civil Rights Act of 1964, courts have imposed various lengths of time prior to the alleged discriminatory acts where discovery was reasonable.  In <u>LaFave v. Symbios, Inc.</u>, 2000 WL 1644154 (D. Colo. 2000), the court determined that discovery for the period five years before the alleged act was reasonable.  In <u>James v. Newspaper Agency Corp.</u>, 591 F.2d 579 (10th Cir. 1979), four years prior to the liability period was deemed appropriate.  In <u>EEOC v. Kansas City S. Ry.</u>, 195 F.R.D. 678, 679-80 (D. Kan. 2000), a three year period prior to the alleged act was approved.  So, too, in <u>Lyoch v. Anheuser-Busch Cos.</u>, 164 F.R.D. 62, 70 (E.D. Mo. 1995), five years prior to the alleged civil rights violation was deemed reasonable.

To the extent that Picchione is "reserving the right" to impose later or additional claims of privilege, the Court advises Defendant that this is improper.  Any documents or portions of documents as to which Picchione wishes to assert a privilege must be provided to the Court, along with a <u>Vaughn</u> index.  The final privilege determination will be made by the Court.  This directive applies to all of the discovery requests discussed herein.

In addition, Picchione states in his answer to this request that he "reserves the right to redact"

home addresses and social security numbers of any police officer identified in the internal affairs files, or of any non-party citizens.  Redaction of the police officers' home addresses and social security numbers is permissible; however, Picchione may not redact addresses of "non-party citizens" who may have information relevant to the case and whom Plaintiff may need to contact.

<u>Requests Nos. 6 and 7</u>

In Request No. 6, Plaintiff asks for all documents reasonably available which Picchione intends to use to support his case, including impeachment and rebuttal documents.  In Request No. 7, he asks for copies of any documents Picchione intends to use or might use to impeach any witnesses.

Picchione responds that he has not yet identified all such documents, but that in the IPTR he previously identified those documents known to him, and he will supplement this response as additional documents become known.

Plaintiff complains that these are insufficient responses, and that "[s]urely Defendant has made some preparation for trial after 17 months in litigation" and should be compelled to provide whatever he has identified up to the present time.  Defendant counters that he has not yet determined which documents he intends to use at trial, for impeachment or otherwise, as the parties are still in discovery and "the case is evolving."

The Court finds that Picchione's responses answered the questions that were asked.  The Court reminds Picchione of his continuing to duty to supplement his answers to Plaintiff's discovery requests to provide Plaintiff with all material to which no objection has been raised, as soon as the material becomes available.

Plaintiff requests that the Court impose evidentiary sanctions on Picchione for delay and

obstruction.  The Court does not find evidentiary sanctions to be appropriate in this case.

## Order

IT IS THEREFORE ORDERED that Plaintiff's Motion to Compel [Doc. 80] directed to Defendant Steve Picchione is granted in part and denied in part, as detailed above.  All discovery ordered herein shall be made within ten days of the date of this Order.

IT IS FURTHER ORDERED that the disclosures ordered herein shall be made subject to a **Protective Order** to ensure confidentiality of sensitive information, the terms of which are as follows:

1.  Defendant Picchione (hereinafter referred to as the "Defendant Officer") shall produce to Plaintiff's counsel a copy of those portions of his personnel files and internal affairs files which the Defendant Officer does not contend are privileged from disclosure, within ten (10) days of the date of this Order.

2.  Defendant Officer shall produce to Chief United States Magistrate Judge Lorenzo F. Garcia a copy of those portions of his personnel files and internal affairs files which Defendant Officer contends are privileged from disclosure, along with a Vaughn index as described below.  The Court will then conduct an *in camera* inspection to ensure that neither privileged matters nor information which is entitled to a reasonable expectation of privacy is disclosed.  Defendant Officer shall produce these portions of his personnel files and internal affairs files within ten (10) days of the date of this Order.

3.  Along with the files, Defendant Officer shall submit to the Court and serve on Plaintiff's counsel a Vaughn index, which shall include a listing of the portions of the documents which Defendant seeks to protect, a description of the nature of these portions, their author, date of creation, and the names of any persons to whom the portions were distributed.  Counsel must also specify the reasons for the withholding, including a specification of the nature of the privilege claimed, if any.

4.  Plaintiff and Plaintiff's counsel shall hold these personnel and internal affairs files in the strictest of confidence, store the files securely, and use the files solely for the purposes of this litigation.

5.  Plaintiff and Plaintiff's counsel shall not disclose or produce these personnel and internal affairs files to any non-party at any time except for police procedures experts retained by Plaintiff in this matter and for use as exhibits at trial.

6.   Plaintiff and Plaintiff's counsel shall accept responsibility for limiting access to these personnel and internal affairs files to those qualified persons (attorneys, associates, staff/employees who are working on the litigation, and Plaintiff's police procedures experts) who are authorized to receive the files under a Protective Order.

7.   Plaintiff and Plaintiff's counsel agree to return to Defendant Officer his personnel and internal affairs files produced under this Protective Order within thirty (30) days of the resolution of this case.

8.   Plaintiff and Plaintiff's counsel agree to purge all copies of Defendant Officer's personnel and internal affairs files from Plaintiff's and Plaintiff's attorney's files at the resolution of this lawsuit.

Lorenzo F. Garcia
Chief United States Magistrate Judge