IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

CHRIS JONES,

        Plaintiff,

 vs.                                                        No. CIV 04-174 JH/LFG

THE CITY of ALBUQUERQUE; OFFICER
STEVE PICCHIONE, OFFICER WOSICK,
OFFICER MASON, OFFICER MOCK, SGT. HEH,
ALBUQUERQUE POLICE DEPARTMENT,
in their official and individual capacities;
GILBERT GALLEGOS, ALBUQUERQUE CHIEF
of POLICE, ROBERT WHITE, ALBUQUERQUE
CITY ATTORNEY, in their official and individual
capacities; and DONALD HARRIS, ALBUQUERQUE
ASSISTANT CITY ATTORNEY, in his official and
individual capacities,

        Defendants.

**MEMORANDUM OPINION AND ORDER
ON PLAINTIFF'S MOTION TO COMPEL
DIRECTED TO DEFENDANT GILBERT GALLEGOS**

THIS MATTER comes before the Court on Plaintiff Chris Jones ("Jones")'s Motion to Compel Defendant Gilbert Gallegos ("Gallegos") to provide answers to Requests for Production [Doc. 75], filed herein on July 13, 2005. Gallegos filed his Response [Doc. 94] on August 5, 2005, and Plaintiff filed his Reply [Doc. 106] on August 29, 2005. The motion is now fully briefed. No oral argument is necessary. For the reasons given below, the Motion to Compel is granted in part and denied in part.

**Background**

The allegations of Plaintiff's complaint and other factual and procedural matters in this case are set forth in the Court's Memorandum Opinion and Order on Plaintiff's earlier Motion [Doc. 70] to Compel Defendant Wosick to respond to discovery requests, and will be referred to herein only as necessary to discussion of the issues.

Jones served the various Defendants with discovery requests, beginning in September 2004, including Requests for Production directed to Gallegos. An additional Request was served in November 2004. Defendant Gallegos served his response to Plaintiff's first set of Requests in February 2005, and subsequently "partially responded" to the second set of Requests. Plaintiff's attorneys were dissatisfied with the Defendants' responses, and counsel states in the motion that they made several attempts to confer with defense counsel, which resulted Gallegos serving "several small supplements" to his responses.

Plaintiff was still unsatisfied with these responses and sent a "formal good-faith letter" to Gallegos dated March 21, 2005. Gallegos's counsel responded to the letter, but further contact between the parties did not resolve the discovery disputes. Jones now files this Motion to Compel.

**Discussion**

Jones asserts that Gallegos provided incomplete and non-responsive answers to his Interrogatories and Requests for Production, making conclusory and unjustified objections to the discovery requests and failing to support his claims for privilege and privacy with a privilege log. He seeks a Court order directing Gallegos to fully respond and asks as well for unspecified sanctions against Gallegos.

Gallegos asserts that, counting all sub-parts, Plaintiff's interrogatories exceed the numerical

2

limits. He further claims that, notwithstanding this, his answers constituted good-faith attempts to respond to the discovery requests, many of which were, he asserts, vague, irrelevant and overly broad. He argues that there is no basis for imposing sanctions on him.

The federal rules provide for broad and liberal discovery. Fed. R. Civ. P. 26 allows each party to obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. To be discoverable, the information need not be admissible at trial so long as it appears reasonably calculated to lead to discovery of admissible evidence.

While this language is broad, the scope of allowable discovery is not without limits. In considering motions to compel, the Court may properly balance the needs and interests of the parties and may limit discovery where the benefit is minimal and the burdens of production are great. <u>Koch v. Koch Indus., Inc.</u>, 203 F.3d 1202, 1238 (10th Cir. 2000); Fed. R. Civ. P. 26(b)(2).

With these principles in mind, the Courts turns to an examination of the disputed Requests for Production, as well as the appropriate form of protective order in this case.

<u>REQUESTS FOR PRODUCTION</u>

As noted above, Gallegos contends in his Response brief to Plaintiff's Motion to Compel that the number of Requests for Production exceeds the maximum limit. This assertion was not made as an objection to answering any specific request, and the Court will not consider an objection raised for the first time in Defendant's briefing on the motion.

Plaintiff makes the general complaint [Doc. 106, at 5] that the documents Gallegos has produced in response to these requests have not been indexed – that is, he has not indicated the particular request to which each document is supposed to be responsive. The Court orders Gallegos to provide this information.

Requests Nos. 4(I) and 4(II)

Due to a clerical error, Plaintiff submitted two Requests both numbered "4." The Court will refer to the first No. 4 as "4(I)" and to the second No. 4 as "4(II)."

Request 4(I) asks Gallegos to provide copies of all reports by any investigator or by any expert or consultant in police or public safety, since 1995, concerning Albuquerque Police Department ("APD") operations related to search and seizure practices, evidence handling, and property retention and forfeiture, including all statements taken, reported findings, and conclusions or recommendations. Request No. 4(II) asks for all reports or internal investigations created by any employee of the City of Albuquerque ("City"), concerning the subject matter outlined in No. 4(I).

Gallegos objected to both requests on grounds the requests are irrelevant, vague, overly broad, unduly burdensome, and may call for documents protected by attorney-client or work product privileges. In addition, Gallegos objected to No. 4(II) on grounds the material sought may violate a police officers' or citizen's right to privacy.

Plaintiff argues that he is attempting to establish the policies and procedures used by APD in relation to seized citizen properties, and that these documents are relevant to that portion of the lawsuit. Plaintiff further asserts that Gallegos has waived his right to assert privilege by failing to provide a privilege log, and that police officers have no legitimate privacy interest in keeping allegations of their own misconduct from discovery. Plaintiff argues further that the information sought is relevant to Plaintiff's claims of municipal and supervisory liability.

Gallegos counters that the requests are so overly broad that he cannot determine what Plaintiff seeks in spite of Plaintiff's narrowing the request, in his Memorandum in Support, to all formal investigation materials known to the public regarding evidence handling. Gallegos further argues that

4

the requests are "so broad as to prohibit the production of a privilege log." He suggests that Plaintiff should ask for individual reports with specificity. Plaintiff points out that, in the course of the various contacts with Defendants, he did in fact detail the reports then known to the public, and asked for them by name. He states further that after Defendants produced an incomplete POC (Police Oversight Commission) report, Plaintiff learned that there was a "second AG report issued to APD," and Plaintiff now seeks that report by name, as he did in an earlier letter to defense counsel. In addition, Plaintiff complains that none of the discovery produced thus far has been indexed, and he cannot determine to which Request any particular document purports to be responsive.

The Court finds that the material sought is relevant to the issues in this case, and the requests for any investigation, external or internal, into APD property handling practices, and related search and seizure practices, is not overly vague nor overly broad. Although he asserts privilege and privacy rights, Gallegos has not sought a protective order nor has he submitted privilege log. However, there are legitimate privacy issues at stake.

The Tenth Circuit recognizes that individual police officers have a right to maintain the confidentiality of personal data contained in police files. Denver Policemen's Protective Ass'n v. Lichtenstein, 660 F.2d 432 (10th Cir. 1981). "[p]ublic officials . . . are not wholly without constitutionally protected privacy rights in matters of personal life unrelated to any acts done by them in their public capacity." Id., at 435, *quoting from* Nixon v. Admin'r of Gen. Services, 433 U.S. 425, 457, 97 S. Ct. 2777, 2797 (1977).

However, where the documents do not contain personal data but are "related simply to the officers' work as police officers," the information is not protected from disclosure in a civil lawsuit by considerations of privacy. Lichtenstein, at 435. As the Tenth Circuit held elsewhere, there is "no

5

absolute right to privacy in the contents of personnel files. Only highly personal information is protected." Flanagan v. Munger, 890 F.2d 1557, 1570 (10th Cir. 1989). *See also*, Mason v. Stock, 869 F. Supp. 828, 833 (D. Kan. 1994) (the privacy interests of police officers should be limited in view of their positions as public servants). And "[even] a legitimate expectation of privacy . . . may be overridden by a compelling state interest." Lichtenstein, at 436. In the context of discovery in a Section 1983 action, the court noted:

> The compelling state interest involved here is the ascertainment of the truth . . . . [I]t is of special import that suits brought under this statute [*i.e.*, Section 1983] be resolved by a determination of the truth rather than by a determination that the truth shall remain hidden.

Id.

It is clear that these investigative records contain a plethora of information that may not be relevant to the parties' claims and defenses, and production of that information would not lead to the discovery of relevant, admissible evidence. For example, the files may include Social Security numbers, dates of birth, medical information and other critical, personal information which if improperly disclosed and distributed could cause difficulties.

Similarly, disclosure and public dissemination of an officer's home address and home telephone number could result in safety and security issues for an officer or his or her family. The records may also contain much other information that isn't relevant to any claim or defense in this case. *See* Fed. R. Civ. P. 26.

Investigative and internal affairs files may contain personal data, such as an officer's home address or perhaps a psychological evaluation, which could give rise to a right of confidentiality. But, as noted above, this right to confidentiality is not absolute and may be overridden by a compelling

state interest such as "ascertainment of the truth" in civil litigation. Lichtenstein, at 436. Given the "broad federal mandate for discovery in all civil actions," Wood v. Breier, 54 F.R.D. 7, 10 (E.D. Wis. 1972), "[t]he police must make a 'substantial threshold showing' . . . that there are specific harms likely to accrue from disclosure of specific materials . . . . [T]he burden of persuasion rests on the party seeking to prevent disclosure." King, at 189, 191. In addition, "Section 1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all." Wood, at 10. Thus, the Court will carefully scrutinize the claims that documents be withheld. Defendants' arguments for nondisclosure "must be so meritorious as to overcome the fundamental importance of a law meant to insure each citizen from unconstitutional state action and of the federal rules of discovery meant to insure that no relevant fact remain hidden." Id., at 13.

As noted above, the material sought in these requests is relevant to Plaintiff's claims of individual and municipal liability. Plaintiff alleges in his complaint that certain supervisory defendants, as well as the municipal defendant, are liable for maintaining policies regarding search and seizure and retention of seized property which violate Plaintiff's constitutional rights, and that these defendants, including Gallegos as well as City Attorney Robert White, knew of and approved of these unconstitutional policies or ratified them and, in addition, the City failed adequately to train and supervise its police personnel and city attorneys. Plaintiff seeks, among other relief, punitive damages based on its allegations that defendants acted intentionally and wantonly, with deliberate indifference to the constitutional rights of the public, including Plaintiff.

Such claims require that Plaintiff show a widespread custom or practice on the part of the municipal defendant, carried out with the requisite degree of culpability, and demonstrate "a direct

7

causal link between the municipal action and deprivation of federal rights." Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998). And municipal liability can be predicated on the municipality's deliberate indifference in the face of actual or constructive knowledge of past acts of misconduct by the officer. Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 117 S. Ct. 1382 (1997).

The records sought are, therefore, relevant to the claims and defenses in this case. Gallegos is directed to produce all reports responsive to Plaintiff's Requests Nos. 4(I) and 4(II). However, recognizing the legitimate privacy right in certain portions of these files, the Court will order that the documents be produced under the following conditions.

All portions of these documents to which Gallegos does not assert a privilege or privacy right are to be produced directly to Plaintiff within ten days of the date this Order is filed, and subject to a protective order. As the parties have not agreed to the terms of a protective order, the Court includes a protective order at the end of this Memorandum Opinion. This protective order will be applicable to any information disclosed pursuant to this Order if the Court refers to the protective order in directing disclosure.

Gallegos shall produce the remainder of the documents to the Court for an *in camera* review. To the extent he claims that any portions of the material is either: (1) personal data, unrelated to any police officer's work as a police officer; or (2) protected by privileges including attorney-client, attorney work product, or any other privilege, Gallegos shall submit a Vaughn index to the Court and serve the index on Plaintiff's counsel.

The Vaughn index shall include a listing of the portions of the Bates-stamped documents which Defendants seek to protect, a description of the nature of these portions, their author, date of

creation, and the names of any persons to whom the portions were distributed. Counsel must also specify the reasons for the withholding, including a specification of the nature of the privilege claimed, if any. The Court will make rulings on any asserted privileges once it has reviewed the documents, along with the Vaughn index. Following its review, the Court will issue a supplementary order detailing whether any of the information submitted should be produced to Plaintiff.

While Plaintiff is entitled to fair discovery, the ten-year time frame for which information is sought is not reasonable, and the Court will limit the time period to material covering the preceding five years. In related civil rights litigation in the employment area under Title VII of the Civil Rights Act of 1964, courts have imposed various lengths of time prior to the alleged discriminatory acts where discovery was reasonable. In LaFave v. Symbios, Inc., 2000 WL 1644154 (D. Colo. 2000), the court determined that discovery for the period five years before the alleged act was reasonable. In James v. Newspaper Agency Corp., 591 F.2d 579 (10th Cir. 1979), four years prior to the liability period was deemed appropriate. In EEOC v. Kansas City S. Ry., 195 F.R.D. 678, 679-80 (D. Kan. 2000), a three year period prior to the alleged act was approved. So, too, in Lyoch v. Anheuser-Busch Cos., 164 F.R.D. 62, 70 (E.D. Mo. 1995), five years prior to the alleged civil rights violation was deemed reasonable.

Request No. 5

In Request No. 5, Plaintiff asks Gallegos to produce copies of all grievances, reports, internal investigations, or other complaints concerning APD officers for the preceding ten years, regarding search and seizure practices, evidence handling, property retention and forfeiture, and related issues.

Gallegos objected to this request on grounds is irrelevant, vague, overly broad, unduly burdensome and, in addition, it may call for material which is protected by attorney-client or work

product privilege, or which may violate an officer's or citizen's right to privacy.

Plaintiff states in his Memorandum that, in conversations with Defendants' counsel, he agreed to limit his request to material for the past five years only, and to material dealing with currency handling practices rather than the broader request which referred to property handling practices. Plaintiff says that Defendants agreed to these restrictions but still have not produced the requested discovery. Plaintiff argues that citizen complaints are relevant to the issues of supervisory liability and whether the municipal response to known deficiencies within the police department was adequate or, on the other hand, indicates deliberate indifference to identified constitutional problems.

The material sought is relevant. In light of Plaintiff's voluntary restriction of his request for these materials for the past five years only, and related to currency handling practices, the Court directs Gallegos to comply with Plaintiff's Request No. 5. All material sought shall be produced directly to Plaintiff. However, any portions of this material for which Gallegos seeks privacy or privilege protection shall be submitted to the Court for *in camera* inspection and be accompanied by a Vaughn index, as described above in the discussion of Requests Nos. 4(I) and 4(II). The provisions of the protective order set forth below shall apply to these disclosures.

To the extent that Gallegos is "reserving the right" to impose later or additional claims of privilege, the Court advises Defendant that this is improper. Any documents or portions of documents as to which Gallegos wishes to assert a privilege must be provided to the Court, along with a Vaughn index. The final privilege determination will be made by the Court. This directive applies to all of the discovery requests discussed herein.

In addition, Gallegos states in his answer to this request that he "reserves the right to redact" home addresses and social security numbers of any police officer identified in the internal affairs files,

or of any non-party citizens. Redaction of the police officers' home addresses and social security numbers is permissible; however, Gallegos may not redact addresses of "non-party citizens" who may have information relevant to the case and whom Plaintiff may need to contact.

Request No. 7

In this request, Plaintiff asks a copy of all complaints filed in state or federal court for the past ten years, against Gallegos or any of his agents or employees, or any City employee, concerning the same issues as outlined in Request No. 5.

Gallegos objected to this request on grounds is irrelevant, vague, overly broad and unduly burdensome. For the reasons given above in the discussion of Request No. 5, the Court rejects these objections. Gallegos is directed to comply with Request No. 7, with the restrictions that he need only produce names of parties and docket numbers, for the past five years. As these are public records, Plaintiff can retrieve the documents on his own.

Request No. 8

In this request, Plaintiff seeks the personnel files, including certain specified information such as pre-employment psychological evaluations, training records, etc., for "any [City] employee . . . identified in the interrogatories, including but not limited to" APD officers Steve Picchione, Michael Wosick, Christopher Mason, Officer Mock, Sgt. Paul Heh, and Detective Griego. All of these officers are defendants in this case, with the exception of Detective Griego.

Gallegos objected on grounds the request is overly broad, irrelevant, and may violate the officers' constitutional right to privacy, as well as the privacy rights of non-party officers and non-party citizens. Without waiving these objections, Gallegos states that the officers named in the request will agree to production of their personnel files for *in camera* inspection and subject to certain

11

conditions. In his Reply brief, Plaintiff states that he withdraws his request for pre-employment psychological evaluations.

For the reasons discussed above in connection with Requests Nos.4(I) and 4(II), the Court will order production of the personnel records requested, including that for non-party Detective Griego, as he has consented to disclosure, under the conditions set forth previously. That is, all portions of these files to which Gallegos and the individual officers do not assert a privilege or privacy right are to be produced directly to Plaintiff within ten days of the date this Order is filed, and subject to the protective order set out below. Gallegos shall produce the remainder of the personnel files to the Court for an *in camera* review, along with a Vaughn index. Following its review, the Court will issue a supplementary order detailing whether any of the information submitted should be produced to Plaintiff.

This order applies only to the persons specifically named in the request. The demand for personnel records of "any City employee identified in the interrogatories" is vague and overly broad.

The Court notes also that at least some of the defendant officers have been directed, in separate Memorandum Opinions and Orders resolving Plaintiff's other Motions to Compel directed to these individual officers, to produce their personnel files under similar conditions. The Court does not intend by these Orders that Defendants will produce duplicative discovery.

Request No. 9

In this request, Plaintiff asks for all documents prepared by APD regarding seized, forfeited, transferred and abandoned properties and currency from 1999 to present, including inventories and current status of all such properties and currency, and also including documentation showing compliance with statutory and administrative requirements.

Gallegos objected on grounds the request is irrelevant, vague, overly broad and unduly burdensome. Plaintiff states in his Memorandum that the City did produce a single inventory covering five years, in response to Plaintiff's discovery requests directed to Defendant White. However, he complains that this inventory is not responsive to this request, as it fails to indicate disposition of properties and fails to correlate police report numbers with state district court cases. Plaintiff states that he has attempted to glean the information he needs from the discovery thus far produced, and to work with Defendants for help in compiling the necessary data, but he has met with noncooperation.

Defendant counters that the request is overly broad in that it seeks "all documents" related to seized and forfeited properties, which could include such things as evidence tags, tow sheets, etc.

The Court agrees that the request is overly broad and unreasonable. The Court, however, directs Gallegos to respond further to this request by providing the current status of the property identified in the inventory sheets previously provided to the Plaintiff.

<u>Request No. 10</u>

In this request, Plaintiff seeks copies of any documents Gallegos intends to use, or might use, to impeach Plaintiff's witnesses.

Gallegos responds that he has not yet identified any such documents, but he refers Plaintiff to the parties' Initial Pretrial Report ("IPTR") and states that he will supplement the response as additional documents become known to him. Plaintiff argues that this is merely an attempt to put off complying with his discovery obligations and "he cannot simply choose to produce information when he feels like it."

The Court cannot force Gallegos to produce documents which he has not yet identified.

13

However, the Court directs him to supplement his answer to this request, to the extent he has not already done so and to the extent such information exists. He is reminded of his continuing duty to supplement responses to discovery requests.

Request No. 12

Plaintiff seeks copies of all internal investigations and dispositions thereof of citizen complaints against the officers named in Request No. 8, including non-party Griego, as well as any other APD employee "previously identified in the interrogatories."

Gallegos objected, incorporating his objection to Request No. 8. It appears that Gallegos is offering the individual officers' personnel files as responsive to this request.

The material sought is relevant and will be ordered produced under the same conditions as stated in the order dealing with Request No. 8. To the extent the officers' personnel files do not fully respond to the question asked, Gallegos must submit additional documents, including the officers' internal affairs files, reflecting internal investigations and dispositions of citizen complaints against the named persons. The request is vague and overly broad in seeking material related to "any other" APD employee previously identified in interrogatories.

Request No. 14

In this request, Plaintiff asks Gallegos to produce all documentation related to the chain of custody of the $10,000 from the date of its seizure, February 19-20, 2001, to the present, including its inventory number or other identifying information and documentation showing the rate of interest which the seized money has earned to date.

Gallegos states that he has requested the documents and will provide the information, but he objects to giving out the specific account number into which the currency was deposited "for reasons

14

of security."

Plaintiff complains that, although Gallegos has provided some documents in connection with this request, they are not fully responsive to the question for all documentation as to the chain of custody. He states that Gallegos has represented, through counsel, that no currency logs can be found for the $10,000 in question, and no deposit record exists of the money; however, he has not provided an affidavit as to these assertions by counsel. In addition, he has not received information on the accounts used for currency seizure and whether these accounts are interest bearing. He argues that the account information and balances are relevant to establishing a pattern and practice of seizing and failing to return money, and relevant to damages.

In his Response to the Motion, Gallegos "agrees he needs to produce verified answers regarding the non-existence of deposit records or evidence logs, as well as whether the account is interest bearing." The Court now orders him to provide this information, save for the full account number. Gallegos shall provide the last four digits of the account number(s).

<u>Request No. 16</u>

In this request, Plaintiff seeks transcripts or tapes of any interviews, or copies of any complaints, concerning conduct of APD officers during the execution of searches, and of search and arrest warrants, and/or copies of APD early warning system profiles and/or internal affairs files.

Gallegos objected on grounds the request is irrelevant, vague, overly broad and unduly burdensome. He further incorporated his objection to Request No. 8, which set forth a privacy ground for refusing to disclose. Without waiving that objection, Gallegos stated that he would produce the personnel and internal affairs files for the six officers listed in Request No. 8, for an *in camera* inspection and subject to certain conditions.

Plaintiff argues that the information requested is relevant to his claims of municipal liability. He states that Defendant has not even admitted that any complaints exist, while the news media has reported that 109 citizen complaints regarding seized property were investigated in the past year. Defendant counters that the request is overly broad as it "has nothing to do with currency issues and goes way beyond the limitations of the lawsuit," and furthermore it states no time limitation.

Plaintiff says the parties have already agreed to a five-year time frame. The Court finds that information as to citizen complaints is relevant to Plaintiff's pattern and practice claim, and that the five-year period is reasonable. Gallegos is directed to produce documentation of such complaints; however, the Court limits these to complaints regarding searches and seizures involving currency only. In addition, the internal affairs files for the six officers, which Gallegos agreed to produce, shall be disclosed under the procedure for *in camera* inspection described above in the discussion of Requests Nos. 4(I) and 4(II).

Additional Discovery Request

Finally, Plaintiff seeks the Court's order compelling Gallegos to respond to an additional discovery request served on November 10, 2004. In this request, Plaintiff seeks all documents, including memoranda, reports, emails and letters, drafted by Larry Sonntag regarding the City's failure to take preventive action to restrict destruction of evidence relating to property in the possession of APD, including but not limited to Sonntag's October 11, 2004 memo.

Plaintiff has not provided the Court with any written response to this request, but the Court assumes that Gallegos does not object to it, as Plaintiff reports that Gallegos produced the specifically requested October 11, 2004 memo and never objected to the request. Plaintiff also states that Gallegos has not provided any other material in response to this request, even though the POC report

16

reveals that approximately 15,000 e-mails were reviewed.

Plaintiff states further in his Reply that Gallegos represented that an affidavit, stating whether any more Sonntag memos exist, will be forthcoming; however, but Plaintiff has never received such an affidavit.

Gallegos did not submit a timely objection to this request based on privacy, privilege, or overbreadth. However, given the sheer volume of Plaintiff's discovery requests, the failure to object may be due to inadvertence. The Court orders Gallegos to produce all documents drafted by Sonntag on this topic, unless he claims a privilege. In that event, he should follow the procedures for submitting such documents *in camera* and with a Vaughn index, as set forth in the discussion above concerning Requests 4(I) and 4(II).

Plaintiff also asks for sanctions against Gallegos for "willful and flagrant discovery abuse," arguing that a proper sanction would be default judgment. The Court does not find that sanctions are justified in this case.

## Order

IT IS THEREFORE ORDERED that Plaintiff's Motion to Compel [Doc. 75] directed to Defendant Gilbert Gallegos is granted in part and denied in part, as detailed above. All discovery ordered herein shall be made within ten days of the date of this Order.

IT IS FURTHER ORDERED that the disclosures ordered herein shall be made subject to a **Protective Order** to ensure confidentiality of sensitive information, the terms of which are as follows:

1. Defendant Gallegos shall produce to Plaintiff's counsel a copy of those portions of the personnel files and internal affairs files described above which he does not contend are privileged from disclosure, within ten (10) days of the date of this Order.

2. Gallegos shall produce to Chief United States Magistrate Judge Lorenzo F. Garcia

17

a copy of those portions of the personnel files and internal affairs files which he contends are privileged from disclosure, along with a <u>Vaughn</u> index as described below. The Court will then conduct an *in camera* inspection to ensure that neither privileged matters nor information which is entitled to a reasonable expectation of privacy is disclosed. Gallegos shall produce these portions of the personnel files and internal affairs files within ten (10) days of the date of this Order.

3. Along with the files, Gallegos shall submit to the Court and serve on Plaintiff's counsel a <u>Vaughn</u> index, which shall include a listing of the portions of the documents which Defendant seeks to protect, a description of the nature of these portions, their author, date of creation, and the names of any persons to whom the portions were distributed. Counsel must also specify the reasons for the withholding, including a specification of the nature of the privilege claimed, if any.

4. Plaintiff and Plaintiff's counsel shall hold these personnel and internal affairs files in the strictest of confidence, store the files securely, and use the files solely for the purposes of this litigation.

5. Plaintiff and Plaintiff's counsel shall not disclose or produce these personnel and internal affairs files to any non-party at any time except for police procedures experts retained by Plaintiff in this matter and for use as exhibits at trial.

6. Plaintiff and Plaintiff's counsel shall accept responsibility for limiting access to these personnel and internal affairs files to those qualified persons (attorneys, associates, staff/employees who are working on the litigation, and Plaintiff's police procedures experts) who are authorized to receive the files under a Protective Order.

7. Plaintiff and Plaintiff's counsel agree to return to Gallegos the personnel and internal affairs files produced under this Protective Order within thirty (30) days of the resolution of this case.

8. Plaintiff and Plaintiff's counsel agree to purge all copies of the personnel and internal affairs files from Plaintiff's and Plaintiff's attorney's files at the resolution of this lawsuit.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
Chief United States Magistrate Judge